**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**EASTERN DIVISION**

**SYLVESTER KIMP**                                                                               **PLAINTIFF**

V.                              **CASE NO.: 2:10CV00133 BD**

**MICHAEL J. ASTRUE, Commissioner,**
**Social Security Administration**                                                    **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

Plaintiff Sylvester Kimp brings this action for review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act (the "Act"). For reasons that follow, the decision of the Administrative Law Judge ("ALJ") is AFFIRMED.[1]

**I.      Procedural History:**

Mr. Kimp filed his application for SSI on August 22, 2005. He alleged disability since August 22, 2003, due to arthritis, knee problems, and tennis elbow. (Tr. 47, 95) After the Commissioner denied his applications at the initial and reconsideration stages of administrative review, Mr. Kimp requested a hearing before an ALJ. The ALJ held a hearing on December 19, 2007, and Mr. Kimp appeared with his attorney. (Tr. 193-210)

---

[1] The Honorable Troy M. Patterson, Administrative Law Judge.

At the time of the hearing, Mr. Kimp was a 49-year-old with an eleventh grade education. (Tr. 198) He was 5'11" tall and weighed approximately 160 pounds. (Tr. 94) He had past relevant work as a factory worker, but he had not worked since 1991. (Tr. 45, 198) He survived with food stamps and child support. (Tr. 204) The child support payments were to end the month of the administrative hearing because Mr. Kemp's son had turned eighteen. (Tr. 204)

On February 20, 2008, the ALJ issued a decision denying Mr. Kimp benefits. (Tr. 10-14) The Appeals Council denied Mr. Kimp's request for review on July 14, 2010. (Tr. 3-6) He filed the current Complaint for Review of Decision (docket entry #2) on September 10, 2010.

## II.   Decision of the Administrative Law Judge:

The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work[2]; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from

---

[2] If the claimant has sufficient residual functional capacity to perform past relevant work, the inquiry ends and benefits are denied. 20 C.F.R. § 416.920(a)(4)(iv).

2

performing any other jobs available in significant numbers in the national economy. 20 C.F.R. § 416.920(a)-(g).

The ALJ found that Mr. Kimp had not engaged in substantial gainful activity since the onset of his alleged disability. (Tr. 10, 13) His osteoarthritis was deemed a severe impairment. (Tr. 10, 13) According to the ALJ, Mr. Kimp did not have an impairment or combination of impairments, that met or equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 10)

Mr. Kimp could not perform his past relevant work as a factory worker. (Tr. 13-14) The ALJ found, however, that Mr. Kimp retained the residual functional capacity ("RFC") to perform light work.[3] (Tr. 11-14) Using Medical-Vocational Guideline Rule 202.10, the ALJ found that Mr. Kimp was not disabled under the Act. (Tr. 13)

## III.   Analysis:

### A.   *Standard of Review*

In reviewing the Commissioner's decision, this Court must determine whether there is substantial evidence in the administrative record to support the decision. *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009), and 42 U.S.C. § 405(g). "Substantial evidence is evidence that a reasonable mind would find adequate to support the ALJ's conclusion." *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007).

---

[3] Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967(b).

In reviewing the record, the Court must consider the entire record, including evidence that detracts from the Commissioner's decision as well as evidence that supports the decision. The Commissioner's decision cannot be reversed, "simply because some evidence may support the opposite conclusion." *Medhaug v. Astrue*, 578 F.3d 805, 813 (8th Cir. 2009)(quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

B.     *Plaintiff's Argument*

Mr. Kimp argues the ALJ erred in discounting his subjective complaints of pain. (#10) The Commissioner responds that the ALJ discounted Mr. Kimp's subjective complaints for legally sufficient reasons. (#12)

C.     *The ALJ's Credibility Determination*

Under 20 C.F.R. §§ 416.929, the ALJ must consider all symptoms, including pain, and the extent to which those symptoms are consistent with the objective medical evidence. An ALJ's conclusions will be upheld if the record as a whole supports them. *Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001).

At the administrative hearing, Mr. Kimp testified that his knees dislocate on occasion. (Tr. 200) He testified that he was in pain twenty-four hours a day. (Tr. 205) He was not, however, taking any pain medication because his physician's clinic closed two months prior to the hearing. (Tr. 200-201)

Mr. Kimp testified that his hands, joints, and shoulders would swell, and he could not hold anything longer than five minutes. (Tr. 202) He stated that it was unbearable to

stretch with his right hand. (Tr. 202) To get comfortable, Mr. Kimp would lie down on a sofa, although he was more comfortable in a seated position. (Tr. 203) Mr. Kimp was afraid to straighten his legs because they would cramp. (Tr. 203) He stated that he could stand for only three to five minutes, and had never had to stand longer than that. (Tr. 204)

When Mr. Kimp was taking medication, he took naproxen for pain. He previously indicated that he took Vioxx for arthritis. (Tr. 99, 205) Susan Balke, M.D., Mr. Kimp's ex-wife, was listed at the proscribing physician. (Tr. 99) Mr. Kimp testified that Dr. Balke provided him with samples primarily for his allergies. Mr. Kimp did not see Dr. Balke or have a treatment relationship with her. Instead, Mr. Kimp's son got medicine from her if Mr. Kimp needed it. (Tr. 199)

Mr. Kimp testified that a neighbor shopped for him and did his household chores. (Tr. 208) He spent most of his day watching television. (Tr. 209)

The ALJ considered Mr. Kimp's allegations of pain and other limitations. (Tr. 11-13) He found, however, Mr. Kimp's allegations not fully credible. (Tr. 13)

When discrediting a plaintiff's subjective complaints, an ALJ must consider those complaints under the guidelines set out in *Polaski v. Heckler*, 751 F.2d 943 (8th Cir. 1984). *Polaski* factors include: (1) the plaintiff's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5) functional restrictions. *Id.* at 948.

The ALJ acknowledged Mr. Kimp's testimony that his daily activities were limited to watching television. The ALJ noted, however, that Mr. Kimp engaged in numerous activities of daily living. (Tr. 12) He cooked, did laundry, shopped, drove, attended church, and watched television. (Tr. 69-73, 209) He was also the primary custodian for his minor son.

Mr. Kimp testified that he suffered constant, disabling pain. According to Mr. Kimp, the pain never subsided. (Tr. 205) Despite this allegation, he sought pain treatment sporadically at most. (Tr. 110-121, 136-141) He never sought treatment from a pain management clinic or specialist.

When taking prescription medicine, Mr. Kimp took relatively mild pain medications such as vioxx or naproxen.[4] He noted at the hearing, in fact, that he was not taking any pain medication at all. (Tr. 200) In his brief, Mr. Kimp implies that he had recently only stopped taking pain medication because his physician's office closed. (#10, p. 7) With the level of alleged pain, however, Mr. Kimp's failure to ensure continuous pain management speaks for itself. *Page v. Astrue*, 484 F.3d 1040, 1044 (8th Cir. 2007) (failure to seek treatment may indicate the relative seriousness of a medical problem).

The ALJ also noted that Mr. Kimp's allegations were not supported by medical evidence. (Tr. 12) Dr. Balke provided a note in support of Mr. Kimp's disability claim.

---

[4] Medical records for treatment after the administrative hearing show that naproxen was effective in controlling Mr. Kimp's knee pain. (Tr. 145)

(Tr. 139) Despite the fact that she is a physician, Dr. Balke's note is not medical evidence entitled to any weight.

Dr. Balke, Mr. Kimp's ex-wife, had no treating relationship with Mr. Kimp. She provided samples to treat Mr. Kimp's allergies when their son asked for them. (Tr. 199) There is no indication when, if ever, Dr. Balke examined Mr. Kimp. There is also no indication that she reviewed Mr. Kimp's medical records before writing the note. Her note is conclusory; it lacks a description of any limitations; it does not describe the severity of Mr. Kimp's condition; and it addresses areas reserved for the Commissioner. (Tr. 139) See *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005) (conclusions regarding employability are reserved for the Commissioner).

There are few medical records from physicians who actually treated Mr. Kimp for his alleged disabling impairments. It appears Mr. Kimp's treating physician, Leon M. Waddy, Jr., M.D., saw Mr. Kimp primarily for issues with blood pressure. (Tr. 111-113, 136-138, 201)

Mr. Kimp testified that Dr. Waddy tested him for rheumatoid arthritis. (Tr. 202) Test results from October 17, 2006, show Mr. Kimp's rheumatoid factor within normal range. (Tr. 114) Tests on March 20, 2008 (after the administrative hearing) again showed that Mr. Kimp's rheumatoid factor was within normal range. (Tr. 150) It does not appear that the record contains any objective or clinical testings confirming that Mr.

Kimp has rheumatoid arthritis. Despite an alleged arthritis onset in 1987, at the hearing in 2007, Mr. Kimp testified that he had never seen a rheumatologist. (Tr. 102, 205)

On October 5, 2005, Mr. Kimp underwent a general physical examination performed by Sudhir Kumar, M.D. (Tr. 102-108) Mr. Kimp rated his pain from arthritis at 10 on a 10-point scale. (Tr. 102) He was taking vioxx for pain. Mr. Kimp had full range of motion in his spine and all extremities. (Tr. 105) His straight-leg raising was normal, and he had no muscle spasm. (Tr. 105) Mr. Kimp had full strength in all extremities, with no muscle atrophy; normal gait without assistive devices; and full limb function. (Tr. 106) X-rays showed moderate degenerative joint disease in each knee. (Tr. 109) An x-ray of his left knee, taken October 17, 2006, however, was negative. (Tr. 116) Additional x-rays taken on both knees in 2008 were normal. (Tr. 150) Dr. Kumar found no limitations in Mr. Kimp's ability to walk, stand, sit, lift, carry, handle, finger, see, hear, or speak. (Tr. 108)

The ALJ attributed Mr. Kimp's subjective complaints, to the extent that he could not return to past factory work, to the level of exertion that was required. (Tr. 13) The ALJ found, however, that Mr. Kimp retained the RFC to perform light work. (Tr. 12-14)

This Court has no doubt that Mr. Kimp suffered some pain that limited his functioning. The ALJ acknowledged Mr. Kimp's complaints, but found them credible only to the extent that they limited him to light work activity. The ALJ is in the best position to gauge the credibility of testimony, and those credibility determinations are

entitled to some deference. *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). After reviewing all the evidence, this Court concludes that the ALJ's credibility determination is supported by substantial evidence in the record as a whole.

**IV.    Conclusion:**

The Court has reviewed all of the evidence in the record, including all of the medical evidence, the assessment of the consulting physicians, and the hearing transcript. There is sufficient evidence in the record to support the Commissioner's determination that Sylvester Kimp retained the residual functional capacity to perform a significant number of jobs existing in the national economy. Accordingly, Mr. Kimp's appeal is DENIED. The Clerk is directed to close the case.

IT IS SO ORDERED this 7th day of June, 2011.

_____
UNITED STATES MAGISTRATE JUDGE